**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | \* | |
| | | |
| **v.** | \* | **Criminal Case No. JKB-16-0484** |
| | | |
| **ANGEL WHITTINGTON, et al** | \* | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MOTION TO SUPPRESS: WIRETAP**

**<u>DEFENDANT'S MOTION TO SUPPRESS TITLE III INTERCEPTION EVIDENCE</u>**

      Comes now Angel Whittington, through her attorney, Joseph A. Balter,  and moves this Honorable Court to suppress all evidence seized as a result of the government's interception of telephonic communications over Title III wiretaps.  As grounds for this motion, Ms. Whittington states the following:

      1.     The defendant, Angel Whittington, is charged in the indictment with Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d); and, Conspiracy to Distribute and Possess With Intent to Distribute CDS,  in violation of 21 U.S.C. § 846.

      2.     On or about September 16, 2015, the government filed in the United States District Court for the District of Maryland an application for a warrant authorizing the interception of wire communications to and from cellular telephone number (410) 831-8398 and the Court issued an order authorizing the interception of the wire communications pursuant to 18 U.S.C. § 2518.

      3.     Based on discovery provided to the defense, it appears that Ms. Whittington's oral communications were intercepted as a result of the orders.

4.      The interception of the telephonic communications violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968 and the Fourth Amendment to the United States Constitution, and must therefore be suppressed in this criminal case.

5.      Ms. Whittington contends that the evidence obtained as a result of the interception of the telephonic communications should be suppressed on the ground that there was no probable cause to support the issuance of the warrant.

6.      Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522,[1] establishes the statutory scheme that governs the interception of wire, electronic, and oral communications.  Under Title III, an application for a court order authorizing the interception of such communications must be authorized by the Attorney General or an Assistant Attorney General specially designated by the Attorney General.  *See* 18 U.S.C. § 2516(1).  The application must contain:

> (a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;
>
> (b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (I) details as to the particular offense that has been, is being, or is about to be committed, (ii) . . . a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;
>
> (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

---

[1]      Title III was amended and retitled by Title I of the Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508, 100 Stat. 1851.  It continues, however, to be commonly referred to as Title III.

(d) a statement of the period of time for which the interception is required to be maintained. If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

(e) a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire, oral, or electronic communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application; and

(f) where the application is for the extension of an order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results.

18 U.S.C. § 2518(1).

7.      The judge to whom such an application is made may approve the requested interception only if he or she determines that "there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular [enumerated] offense"; "there is probable cause for belief that particular communications concerning that offense will be obtained through such interception"; "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous"; and "there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense[.]" 18 U.S.C. § 2518(3). If the judge approves the order, he or she must specify the persons, if known, and places that are subject to the order, the type of communications to be intercepted and the offense to which it relates, the identity of the applicant, the person authorizing it and the agency authorized to execute it, and the period for which it is effective.  18

U.S.C. § 2518(4).  The order must terminate the surveillance when the objective is attained and may extend in no event longer than thirty days.  The order must also direct that it be executed as soon as practicable and in a manner that minimizes the interception of extraneous matter.  18 U.S.C. § 2518(5).

8.      By codifying this elaborate set of procedural requirements, Congress sought to ensure that electronic surveillance by law enforcement authorities did not occur "except under carefully defined circumstances and after securing judicial authority."  *United States v. Kalustian*, 529 F.2d 585, 588 (9th Cir. 1975).  "Procedural steps provided in the Act [therefore] require strict adherence." *Id*. (citing *United States v. Giordano*, 416 U.S. 505 (1974)); *see also Gelbard v. United States*, 408 U.S. 41, 46 (1972) ("Title III authorizes the interception of private wire and oral communications, but only when law enforcement officials are investigating specified serious crimes and receive prior judicial approval, an approval that may not be given except upon compliance with stringent conditions.").[2]

---

[2]     Given that the government has chosen to rely only on the redacted applications, affidavits, and orders, the sufficiency and legality of those documents under Title III and the Fourth Amendment may be based only upon that same redacted information.  In other words, when the government chooses to withhold certain information from Title III affidavits provided to the defendant, it must then defend the Title III application, affidavit, and order "without relying on the redacted information[.]"  *United States v. Danovaro*, 877 F.2d 583, 588 (7th Cir.1989); *See also United States v. Yoshimura*, 831 F. Supp. 799, 806-07 (D. Hawaii 1993) (defendant entitled to information redacted from Title III affidavit submitted to obtain series of wiretap authorizations which led to his arrest, unless government would not be relying on redacted information in establishing probable cause for wiretaps related to defendant's case); *United States v. Coles*, 2007 WL 2916510, *6 (E.D. Pa. Oct. 5, 2007) (if government does not rely on redacted information as evidence essential to establishing necessity under Title III, and it does not intend to introduce redacted information itself into evidence, defendant's due process rights are not impacted by non-disclosure; "however, . . . were the redacted information essential for the Government's demonstration of necessity, the Defendant's due process rights might be significantly implicated to the point where a different balance between the three interests would need to be struck.").

9.    Ms. Whittington contends that the interception orders were not based on probable cause and are therefore in violation of Title III and the Fourth Amendment to the United States Constitution.

10.   Ms. Whittington contends that the government did not establish the reliability of the informants upon whom it was relying to establish probable cause.

11.   Information provided by confidential informants is assessed under the "totality of the circumstances" approach adopted by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983).[3] *See United States v. Smith*, 726 F.2d 852, 864 (1st Cir. 1984) (applying *Gates* standard to Title III applications); *United States v. Zambrana*, 841 F.2d 1320, 1332 (7th Cir. 1988) (same); *United States v. Diaz*, 176 F.3d 52, 110 (2nd Cir.1999) (standard for probable cause under Title III "is the same as the standard for a regular search warrant" under *Gates*) (quotation omitted).   Under *Gates*, an affidavit must provide the judge with "a substantial basis for determining the existence of probable cause."  462 U.S. at 239.  An affiant's "wholly conclusory statement" regarding the claims of a confidential source fails to meet this requirement, as does an affiant's mere statement that he or she has "received reliable information" from the source.  *Id.*  Instead:

> Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.  In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued.

---

[3]   Prior to *Gates*, a judge making a probable cause determination based on information from confidential sources applied a two-prong test, analyzing the source's basis of knowledge and his or her veracity.  *See Aguilar v. Texas*, 378 U.S. 108 (1964); *Spinelli v. United States*, 393 U.S. 410 (1969).  In *Gates*, the Court abandoned the *Aguilar-Spinelli* two prong test, establishing a unitary "totality-of-the-circumstances analysis," but continued to make clear that such factors as the informant's veracity, reliability, and basis of knowledge remain "highly relevant" in determining the ultimate value of the information under *Gates*.  462 U.S. at 230.

*Id.*

12.    For all these reasons, the affidavit failed to establish probable cause to believe that the subjects were committing, had committed, or were about to commit any of the enumerated offenses.  Because the affidavit was not supported by probable cause the evidence obtained as a result of the wiretaps must be suppressed.

13.    Ms. Whittington contends that the wiretap applications failed to demonstrate that less intrusive investigative alternatives had failed or were unlikely to succeed.

Title III requires that a wiretap application contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ."  18 U.S.C. § 2518(1)(c); *see also* 18 U.S.C. § 2518(3)(c) (prior to authorizing wiretap, issuing judge must find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous").   In enacting Title III, Congress did not expect that wiretapping would be routinely used when traditional investigative techniques could suffice to expose illegal activity.  *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974); *see Dalia v. United States*, 441 U.S. 238, 250 (1979) ("The plain effect of the detailed restrictions of § 2518 is to guarantee that wiretapping or bugging occurs only when there is a genuine need for it and only to the extent that it is needed.") (footnote omitted); *United States v. Giordano*, 416 U.S. 505, 515 (1974) (electronic interception of oral and wire communications is not to be routinely employed as a first step of an investigation); *see also United States v. Clerkley*, 556 F.2d 709, 715-16 (4th Cir. 1977) (because it is extraordinary investigative procedure, wiretap should not be authorized unless traditional investigative techniques have been tried and failed or are shown to be unlikely to

succeed); *United States v. Leavis*, 853 F.2d 215, 221 (4th Cir. 1988) ("Wiretaps are extraordinary investigative means.  Their intrusiveness mandates that courts, in authorizing them, exercise great care in protecting individual privacy."); *United States v. Bobo*, 477 F.2d 974, 979 (4th Cir. 1973) (electronic surveillance is to be allowed only when "judicially authorized under the most precise and discriminating circumstances which meet the requirements of the Fourth Amendment"); *United States v. Lyons*, 507 F. Supp. 551, 555 (D. Md. 1981) ("[C]ourts examine closely challenges for noncompliance [with Title III's exhaustion requirement] and reject applications that misstate or overstate the difficulties involved.") (footnote omitted), *aff'd*, 695 F.2d 802 (4th Cir. 1982).

14.     A judge faced with determining whether to authorize a Title III interception in a particular case must consider the nature of the alleged criminal activity and its inherent susceptibility to detection by means other than electronic surveillance.   A mere boilerplate recitation of the difficulties of gathering usable evidence is not a sufficient basis for authorizing a wiretap.  *See United States v. McKinney*, 785 F. Supp. 1214, 1220 (D. Md. 1992) (citing *Leavis*, 853 F.2d at 221). Importantly, the Title III application must demonstrate why normal investigative measures will not succeed or have not succeeded in the particular case.  *United States v. Robinson*, 698 F.2d 448, 453 (D.C. Cir. 1983) (per curiam); *see also United States v. Spagnuolo*, 549 F.2d 705, 710 (9th Cir. 1977) ("[T]he affidavit, read in its entirety, must give a factual basis sufficient to show that ordinary investigative procedures have failed or will fail in the particular case at hand."); *United States v. Ashley*, 876 F.2d 1069, 1075 (1st Cir. 1989) (government has burden of showing "a 'reasonable likelihood' that alternative investigatory techniques would fail to expose [the information sought to be discovered by way of wiretap]").

15.     As discussed above, the affidavit in this case failed, for a number of reasons, to establish the probable cause necessary to justify the Title III interceptions in this case.  Assuming, however, for argument's sake that the affidavit did adequately establish the requisite probable cause, than it surely cannot be suggested that other investigative procedures were failing.  Indeed, if the government's claims are to be believed regarding the evidence it has obtained in relation to the alleged target offenses, then the affidavit reveals a multitude of traditional modes of investigation that were succeeding at the time the Title III authorization was obtained.  In light of this purported success, the affiant was incorrect to claim that the interception of orders were necessary.

16.     Despite this abundance of information, the affiant nonetheless asserted that normal investigative efforts had been tried and had proven ineffective.  That conclusory assertion, however, cannot transform into a "necessity" the mere dilemma that the agents in this case faced: that investigation of any allegedly large-scale criminal organization is somewhat onerous.  *See United States v. Lilla*, 699 F.2d 99, 104 (2d Cir. 1983) (affidavit failed Title III's exhaustion requirement because it failed to explain why narcotics case under investigation presented problems different from any other narcotics case); *United States v. Kalustian* 529 F.2d 585, 589 (9th Cir. 1976) ("The affidavit does not enlighten us as to why this gambling case presented any investigative problems which were distinguishable in nature or degree from any other gambling case."); *see also id*. (rejecting, as insufficient to establish the need for electronic surveillance under Title III, the government's position "that all gambling conspiracies are tough to crack").  Rather, in these circumstances, where the use of many and diverse forms of investigation were apparently all proving successful, the easy resort to electronic surveillance and the interception of oral and non-verbal communications cannot pass muster under federal wiretap law.  *See Lilla*, 699 at 104-05 (reversing

convictions where "[t]he record . . . does not support the conclusion that other investigative procedures were either unlikely to succeed or were too dangerous to use.  If anything, the record establishes the contrary proposition: the normal investigative procedures that were used were successful. . . ."); *see also, Kahn*, 415 U.S. at 153 n.12 (Title III is "designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime").

17.    Because, according to the affidavit, traditional and less intrusive methods of investigation were succeeding, and because other such methods would likely have succeeded if given the chance to do so, the interception orders in this case violated Title III and the Fourth Amendment. Accordingly, any communications of Ms. Whittington which were intercepted pursuant to the Title III orders must be suppressed.  *See Katz v. United States*, 389 U.S. 347, 355 (1967) (Fourth Amendment requires that a search impose "no greater invasion of privacy . . . than [i]s necessary under the circumstances") (quotation omitted); *see also, United States v. Ippolito*, 774 F.2d 1482, 1486 (9th Cir. 1985):

> Although the government need not pursue every alternative means of investigation, neither should it be able to ignore avenues of investigation that appear both fruitful and cost-effective.  It is not unreasonable to expect the government to utilize those methods that appear potentially productive.  We would flout the statutory intent that wiretaps be used only if necessary, were we to sanction a wiretap simply because the government pursued some "normal" investigative strategies that were unproductive, when more fruitful investigative methods were available.  In effect, the government would be able to secure a wiretap in every case, even where a normal strategy would be likely to achieve the same result without resort to the serious intrusion that a wiretap necessarily entails.

18.    Mr. Whittington contends that the government failed to properly minimize the interception of communications not subject to electronic surveillance.

Title III requires that a wiretap order "shall contain a provision that the authorization to intercept . . . shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter." 18 U.S.C. § 2518(5). Compliance with this statutory directive is judged on a case-by-case basis. *Scott v. United States*, 436 U.S. 128, 139 (1978). Relevant factors in this determination include the government's reasonable expectations concerning the content of and parties to a conversation, and the degree of judicial supervision while the wiretap is being executed. *Clerkley*, 556 F.2d at 716. The burden of proving that the executing agents complied with the statutory minimization requirement falls upon the government. *United States v. Rizzo*, 491 F.2d 215, 217-18 (2d Cir. 1974). To satisfy the minimization requirement, agents must show a "high regard" for the right of privacy of those who are being subjected to surveillance, and must reduce unnecessary intrusions into the speakers' privacy "to the smallest degree possible." *United States v. Oriakhi*, 57 F.3d 1290, 1300 (4th Cir. 1995) (quotations omitted).

WHEREFORE, for all the reasons discussed above, and any others that may develop at a hearing, this Court should exclude any evidence seized pursuant to the Title III orders issued in this case.

Respectfully submitted,


/S/
_____
JOSEPH A. BALTER            #04496
Law Office of Joseph A. Balter, LLC
Mt. Washington Mill
1340 Smith Avenue, Ste 200
Baltimore, Maryland 21201
Telephone:  (410) 375-7082
Facsimile:  (410) 779-1201
Email:        joseph@josephbalterlaw.com


## **REQUEST FOR HEARING**

Pursuant to Rule 105.6 of the Local Rules of the United States District of Maryland, a hearing is requested on the defendant's motion.


/S/
_____
JOSEPH A. BALTER            #04496